UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| Pyrolyx USA Indiana, LLC, | ) | |
| Pyrolyx USA, Inc., and | ) | |
| Pyrolyx AG, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| *vs.* | ) | 2:20-cv-00108-JMS-DLP |
| | ) | |
| Zeppelin Systems GMBH and | ) | |
| Zeppelin Systems USA, Inc., | ) | |
| | ) | |
| *Defendants.* | ) | |

## ORDER

This case began when Plaintiffs Pyrolyx USA Indiana, LLC ("Pyrolyx Indiana"), Pyrolyx USA, Inc. ("Pyrolyx USA"), and Pyrolyx AG ("Pyrolyx Parent") filed a lawsuit in the Superior Court of Vigo County, Indiana, alleging several claims stemming from a soured business relationship and a contract dispute over the construction of a new recovered carbon black facility in Terre Haute, Indiana. [Filing No. 1-1.] Defendants Zeppelin Systems GMBH ("Zeppelin Germany") and Zeppelin Systems USA, Inc. ("Zeppelin USA") removed the action to this Court based on diversity jurisdiction. [Filing No. 1.] Presently pending before the Court are: (1) Defendants' Motion to Transfer Venue or, in the Alternative, to Dismiss or Stay Plaintiffs' Claims Against Defendants ("Motion to Transfer"), [Filing No. 23]; and (2) Defendants' Partial Motion to Dismiss Plaintiffs' Complaint ("Motion to Dismiss"), [Filing No. 48]. Both of these motions are ripe for the Court's review.

# I.
## BACKGROUND AND PROCEDURAL HISTORY[1]

### A.  The Parties

Pyrolyx Indiana is a wholly owned subsidiary of Pyrolyx USA, which in turn is a wholly owned subsidiary of Pyrolyx Parent, a German company.  [Filing No. 33 at 5.]  Throughout the Amended Complaint, Plaintiffs refer to themselves collectively under the single name "Pyrolyx." [*See* Filing No. 33.]  Pyrolyx Parent developed a thermal chemical process to break down tire rubber into a reinforcing agent known as "recovered carbon black," a gritty black powder used to make new tires and black plastic.  [Filing No. 33 at 6.]

Zeppelin USA is a wholly owned subsidiary of Zeppelin Germany, and Plaintiffs refer to both entities collectively as "Zeppelin" throughout the Amended Complaint.  [Filing No. 33 at 5.] Zeppelin is a contractor that builds and installs customized mechanical equipment around the world for the carbon black industry.  [Filing No. 33 at 6.]

### B.  The Parties' Business Relationship and the Contract

Zeppelin Germany and Pyrolyx Parent worked together to build Pyrolyx Parent's pilot carbon black plant in the Netherlands in 2009.  [Filing No. 33 at 6.]  In 2015 and 2016, Zeppelin Germany performed some engineering optimization studies at another plant operated by Pyrolyx Parent in Germany.  [Filing No. 33 at 6.]

---

[1] The factual allegations set forth in this section are drawn largely from Plaintiffs' Amended Complaint, [Filing No. 33], and are not necessarily objectively true.  Furthermore, although the Amended Complaint was filed after the Motion to Transfer and initial brief, Plaintiffs do not assert that the changes made to the Amended Complaint affect the analysis of that Motion, and Defendants assert that their initial arguments "apply with equal force to [the] Amended Complaint."  [Filing No. 53 at 6.]  Accordingly, the Court will apply the parties' arguments to the Amended Complaint.

In or around 2016, Pyrolyx Parent formed Pyrolyx USA and began considering expanding its footprint in the United States by constructing a new carbon black facility in Terre Haute, Indiana (the "Facility"). [Filing No. 33 at 6.]  According to Plaintiffs, Pyrolyx USA was formed around this time "to pursue the Indiana [Facility p]roject." [Filing No. 51 at 10 (citing Filing No. 33 at 5-6).]  In building the Facility, Pyrolyx intended to rely on Zeppelin to provide engineering, construction, and project management consulting services.  [Filing No. 33 at 7.]  In late 2016, Pyrolyx Parent hired Zeppelin Germany to complete front-end engineering and design ("FEED") work for the Facility.  [Filing No. 33 at 8.]  Based on the results of the FEED report, Pyrolyx decided to proceed with construction of the Facility.  [Filing No. 33 at 8.]  In February 2017, Pyrolyx Indiana was formed "to own, operate, fund and manage the Indiana [Facility p]roject." [Filing No. 51 at 11.]

On June 15, 2017, Pyrolyx Indiana and Zeppelin Germany entered into a contract (the "Contract").  [Filing No. 33 at 14; Filing No. 33-1.]  Under the Contract, Pyrolyx Indiana agreed to pay Zeppelin Germany for various goods and services relating to construction of the Facility. [Filing No. 33 at 14-17; Filing No. 33-1.]  The Contract contains a choice-of-law provision which states, "All aspects of this Contract shall be governed and interpreted by the law of the State of New York, except for any conflicts-of-laws authority that would apply another jurisdiction's laws or interpretation."  [Filing No. 33-1 at 19.]  The Contract further provides that, "[i]n the event that a dispute arises between the Parties," certain rules will apply, including that "[v]enue for any claims or disputes under this [Contract] shall exclusively be the Southern District of New York." [Filing No. 33-1 at 19.]

Although the parties dispute the precise chain of events following the signing of the Contract, it is sufficient to note that progress on the Facility project was subject to delays and

increased costs, and Pyrolyx Indiana and Zeppelin USA each blamed the other for perceived wrongdoings.  [Filing No. 25 at 10-11; Filing No. 33 at 17-30.]  On August 18, 2019, Pyrolyx declared Zeppelin in default under the terms of the Contract.  [Filing No. 33 at 25.]

### C.  The Indiana Lien Action

On December 6, 2019, Zeppelin USA filed a lien enforcement action against Pyrolyx Indiana and others in the Superior Court of Vigo County, Indiana, pursuant to Indiana Code § 32-28-3-6.  [Filing No. 25 at 11-12; Filing No. 27 at 1; Filing No. 50-1; Filing No. 51 at 13.]  That action remains pending.

### D.  The New York Lawsuit

Also on December 6, 2019, Zeppelin USA filed a lawsuit against Pyrolyx Indiana in the United States District Court for the Southern District of New York ("SDNY").  [Filing No. 1 in Case No. 1:19-cv-11222-CM (S.D.N.Y.).]  In that lawsuit, Zeppelin USA asserts claims for breach of contract, unjust enrichment, and preliminary injunctive relief relating to the Facility project. [Filing No. 1 in Case No. 1:19-cv-11222-CM (S.D.N.Y.).]

On January 20, 2020, Pyrolyx Indiana filed a motion to dismiss the SDNY lawsuit for lack of personal jurisdiction.  [Filing No. 21 in Case No. 1:19-cv-11222-CM (S.D.N.Y.).]  The court denied the motion, concluding that under federal law, the forum-selection clause in the Contract was enforceable and conferred personal jurisdiction upon the SDNY court.  [Filing No. 44 at 5-9 in Case No. 1:19-cv-11222-CM (S.D.N.Y.).]  In doing so, the court determined that Indiana Code § 32-28-3-17[2] did not invalidate the forum-selection clause because: (1) federal law—not state

---

[2] The statute states: "A provision in a contract for the improvement of real estate in Indiana is void if the provision: (1) makes the contract subject to the laws of another state; or (2) requires litigation, arbitration, or other dispute resolution process on the contract occur in another state."  Ind. Code § 32-28-3-17.

law—governs the enforcement of forum selection clauses, and to the extent that Indiana law "would purport to impose Indiana procedural rules regarding the enforcement of forum selection clauses on a federal court, it is preempted by federal law"; and (2) Indiana is not the forum state, so its law is irrelevant to the question of whether enforcement of the clause would contravene the strong public policy of the forum state.  [Filing No. 44 at 7 in Case No. 1:19-cv-11222-CM (S.D.N.Y.) (citing *M/S Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 15 (1972); *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014)).]  The court further concluded that abstention pending the resolution of the Indiana lien enforcement action under the *Colorado River*[3] doctrine was not warranted.  [Filing No. 44 at 9-17 in Case No. 1:19-cv-11222-CM (S.D.N.Y.).]

Pyrolyx Indiana filed its Answer to the SDNY lawsuit on March 19, 2020.  [Filing No. 45 in Case No. 1:19-cv-11222-CM (S.D.N.Y.).]  That action remains pending.

### E.  Procedural History of this Lawsuit

On February 19, 2020, Pyrolyx Indiana, Pyrolyx USA, and Pyrolyx Parent filed their Complaint against Zeppelin Germany and Zeppelin USA in the Superior Court of Vigo County, Indiana.  [Filing No. 1-1.]  On February 24, 2020, Defendants removed the action to this Court based on diversity jurisdiction.  [Filing No. 1.]

In the Amended Complaint, Pyrolyx Indiana asserts a breach of contract claim against Zeppelin USA.  [Filing No. 33 at 30.]  In addition, Pyrolyx Indiana, Pyrolyx USA, and Pyrolyx Parent assert claims against Zeppelin USA and Zeppelin Germany for fraudulent inducement/fraud, constructive fraud, tortious interference with contract/business relations, and tortious interference with prospective economic advantage.  [Filing No. 33 at 31-37.]

---

[3] *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

Defendants filed their Motion to Transfer on April 3, 2020, and their Motion to Dismiss on April 30, 2020.  [Filing No. 23; Filing No. 48.]  Both motions are now ripe for the Court's review.

## II.
### MOTION TO TRANSFER

### A.  Legal Standard

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." This provision "is intended to place discretion in the district court to adjudicate motions for transfer according to [a] '. . . case-by-case consideration of convenience and fairness.'" *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977 (7th Cir. 2010) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)) (alteration in original).  "The statute permits a 'flexible and individualized analysis' and affords district courts the opportunity to look beyond a narrow or rigid set of considerations in their determinations." *Research Automation*, 626 F.3d at 978 (citing *Stewart*, 487 U.S. at 29).

Additionally, "[i]t is well recognized that a federal district court has the inherent power to administer its docket in a manner that conserves scarce judicial resources and promotes the efficient and comprehensive disposition of cases." *Ridge Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc*., 572 F. Supp. 1210, 1212-13 (N.D. Ill. 1983) (citations omitted).  "Parallel proceedings in separate federal courts should ordinarily prompt judicial action to avoid duplicative efforts." *Gates v. Syrian Arab Republic*, 755 F.3d 568, 579 (7th Cir. 2014) (citing *Colorado River*, 424 U.S. at 817), overruled on other grounds by *Rubin v. Islamic Republic of Iran*, 830 F.3d 470 (7th Cir. 2016).  "As between federal district courts, . . . though no precise rule has evolved, the general principle is to avoid duplicative litigation." *Colorado River*, 424 U.S. at 817.  "District

courts are accorded 'a great deal of latitude and discretion' in determining whether one action is duplicative of another, but generally, a suit is duplicative if the 'claims, parties, and available relief do not significantly differ between the two actions.'" *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) (quoting *Ridge Gold*, 572 F. Supp. at 1213).  As another District Court has explained:

> Judicial economy is a particularly important concern when two actions involving the same parties and issues are pending in different districts. In such situations, federal courts have the inherent power, apart from § 1404, to transfer, stay or dismiss the suit to avoid wasteful, repetitive litigation.  This is so because district courts have the inherent power to administer their dockets in a manner that conserves scarce judicial resources and promotes the efficient and comprehensive disposition of cases.

*Barrington Grp., Ltd. v. Genesys Software Sys., Inc.*, 239 F. Supp. 2d 870, 873 (E.D. Wis. 2003) (internal citations omitted).

### B.  Discussion

Defendants ask the Court to transfer this action to the SDNY pursuant to 28 U.S.C. § 1404(a).  [Filing No. 25 at 13-34.]  They assert that Plaintiffs should not be permitted to relitigate the validity of the forum-selection clause because, based on prudential considerations and a broad application of issue preclusion principles, federal courts may decline to reconsider *de novo* issues already decided by another, coequal court.  [Filing No. 25 at 16-18.]  Defendants argue that in the SDNY case, Chief Judge McMahon followed Supreme Court precedent and arrived at the correct conclusion that under federal law that preempts § 32-28-3-7, the forum-selection clause is valid.  [Filing No. 25 at 18-21.]  In addition, Defendants assert that under the closely-related parties doctrine, all three Plaintiffs are subject to the forum-selection clause, and because the language of the clause is broad, all of Plaintiffs' claims are subject to the clause.  [Filing No. 25 at 21-25.]

Given that the forum-selection clause is enforceable, Defendants argue, the private interest factors under § 1404(a) should be deemed to weigh entirely in favor of transfer.  [Filing No. 25 at 25.]

Even if the forum-selection clause is not enforced, Defendants argue, transfer is still warranted.  [Filing No. 25 at 25-34.]  Specifically, Defendants point out that the SDNY case will proceed regardless of what happens in this case, and that "[n]othing could be more inconvenient to the parties and the witnesses than forcing them to appear and litigate" in two separate cases. [Filing No. 25 at 25-26.]  As to the factors considered in deciding whether to transfer a case, Defendants assert that: (1) Plaintiffs' selection of this forum should receive no weight and the Court should favor the first-filed case; (2) the parties, records, and witnesses are "scattered across the globe" and Indiana offers no inherent geographical advantage, while New York is more centrally located and is "a hub for international travel"; (3) forcing witnesses to appear in two cases will add unnecessary costs; (4) the trial will not require viewing the Facility premises in Indiana; (5) Plaintiffs' claims are compulsory counterclaims that must be raised in the SDNY action; and (6) the public interest factors favor transfer because statistics show that cases are disposed of more quickly in the SDNY, the idea that localized controversies should be decided at home does not apply because interested parties are scattered throughout the world, the fact that New York law will apply to the case favors a New York forum, and there is no need to burden Indiana citizens with jury duty given that the case is already proceeding in New York.  [Filing No. 25 at 26-35.]

In the alternative, Defendants assert that this action should either be dismissed pursuant to Fed. R. Civ. P. 13 because all of Plaintiffs' claims are compulsory counterclaims that should be raised in the SDNY action, or this action should be dismissed or stayed as a matter of wise judicial discretion in order to avoid duplicative litigation.  [Filing No. 25 at 39-40.]

In response, Plaintiffs first argue that this Court lacks discretion to transfer this action because neither venue nor jurisdiction are proper in the SDNY, and § 1404(a) only allows for transfers to courts where venue and jurisdiction are proper. [Filing No. 51 at 14-22.] Specifically, Plaintiffs assert, the forum-selection clause is void under § 32-28-3-17, and, without a valid forum-selection clause, the SDNY has no personal jurisdiction over Plaintiffs. [Filing No. 51 at 15-18.] Regardless, Plaintiffs argue, a majority of the parties in this case—Pyrolyx Parent, Pyrolyx USA, and Zeppelin Germany—were not signatories to the Contract and therefore are not bound by the forum-selection clause even if it is valid. [Filing No. 51 at 18-20.] Plaintiffs also argue that the forum selection clause does not apply the majority of their claims, because four of their five claims are tort claims and are not "claims or disputes under" the Contract. [Filing No. 51 at 20-22.]

Even if jurisdiction and venue were proper in the SDNY, Plaintiffs assert, Defendants have not met their burden to show that the SDNY is clearly more convenient than this District, and Plaintiffs' choice of forum should be given weight. [Filing No. 51 at 22-23.] As to the convenience of the parties, Plaintiffs argue that Pyrolyx Indiana and the Facility are located in Indiana, this action arises from a contract to construct the Facility in Indiana, the lien enforcement action is ongoing in Indiana, and the facts and circumstances giving rise to this action took place primarily in Indiana. [Filing No. 51 at 23-24.] Plaintiffs also point out that Defendants, in the Indiana lien enforcement action, acknowledged that many of the events giving rise to the action took place in Indiana, and Vigo County is the "preferred venue" for that action because the Facility property is located there. [Filing No. 51 at 23-24.] Plaintiffs contend that Defendants have not shown that there are witnesses who are located in New York or who could not appear in Indiana, and the location of material events and evidence does not favor transfer. [Filing No. 51 at 24-26.] Plaintiffs also contend that the interests of justice do not favor transfer because there is no

meaningful difference in the speed at which cases are resolved in the SDNY versus this District, this case will be governed by Indiana law, there is an interest in resolving local disputes locally, and New York has no relationship to the dispute.  [Filing No. 51 at 27-32.]

Plaintiffs further argue that Chief Judge McMahon's decision "is of no authoritative value and is not binding on this Court."  [Filing No. 51 at 32.]  Plaintiffs contend that, in any event, the opinion is inapplicable because: (1) the SDNY lawsuit involves different parties and claims; (2) Chief Judge McMahon was considering a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), rather than a motion to transfer under § 1404(a); and (3) Chief Judge McMahon considered New York law and public policy, not Indiana law and policy as would be relevant to this case.  [Filing No. 51 at 33-34.]  Plaintiffs also argue that issue preclusion does not apply because the SDNY case has not been litigated to a final judgment and the issues are not identical.  [Filing No. 51 at 34-36.]

Finally, Plaintiffs argue that the Court must deny Defendants' alternative request to dismiss or stay this case.  [Filing No. 51 at 36-38.]  Specifically, Plaintiffs contend that their claims cannot be considered compulsory counterclaims in the SDNY action because they are asserted, at least in part, by and against parties that are not involved in the SDNY action.  [Filing No. 37-38.]  Plaintiffs argue that there is "absolutely no basis for this Court to stay or dismiss [their] claims," because, regardless of the outcome of the SDNY case, their claims will not be resolved by a decision in that case.  [Filing No. 51 at 38.]

In reply, Defendants assert that "Plaintiffs analyze the § 1404(a) factors as though the choice were between litigating this case in New York or in Indiana.  In reality, the choice is between litigating in New York only, or litigating in *both* New York *and* Indiana."  [Filing No. 53 at 6 (emphasis in original).]  Defendants reiterate their argument that this Court should defer to

Chief Judge McMahon's ruling on the enforceability of the forum-selection clause because: (1) judicial policy counsels against contradicting rulings by co-equal courts; and (2) the ruling is correct. [Filing No. 53 at 10.] Specifically, Defendants assert that the doctrine of issue preclusion is broad enough that it can be applied even where there has been no final decision, and there is "no good reason to depart from the wise judicial practice of refusing to second-guess, *de novo*, a prior ruling on an identical issue by a co-equal federal court." [Filing No. 53 at 10-11.] In addition, Defendants assert that federal law—not state law—determines the enforceability of a forum-selection clause, and § 32-28-3-17 does not get controlling weight in the transfer analysis. [Filing No. 53 at 11-13.] Defendants also reiterate their argument that the forum-selection clause binds all three Plaintiffs and applies to all of Plaintiffs' claims. [Filing No. 53 at 13-15.] Defendants argue that the valid forum-selection clause renders venue and personal jurisdiction proper in the SDNY. [Filing No. 53 at 15-16.] Finally, Defendants reiterate their previous arguments that the convenience and public-interest factors weigh in favor of transfer and that if transfer is not appropriate, the case should be stayed or dismissed. [Filing No. 53 at 16-19.]

### 1. Validity and Effect of the Forum-Selection Clause

The Court will begin with the validity and effect of the Contract's forum-selection clause. Notably, however, the Court is not conducting this analysis in a vacuum, as Chief Judge McMahon has already concluded that the forum-selection clause is valid, enforceable, and confers personal jurisdiction upon the SDNY, at least as to Pyrolyx Indiana and Zeppelin USA. Plaintiffs apparently disagree with Chief Judge McMahon's ruling, but that in and of itself is not a sufficient basis for this Court to revisit the issue here. "The federal judicial structure is a vertical hierarchy, meaning that errors are corrected by higher courts, not coequal ones. An argument that one court

'got it wrong' should be raised with the applicable court of appeals, not another district court." *Pierce Mfg. Inc. v. First In Inc.*, 2010 WL 2854258, at *2 (E.D. Wis. July 19, 2010).

As to the preclusive effect of Chief Judge McMahon's decision, the Seventh Circuit has observed that the concept of issue preclusion "refers to the simple principle that 'later courts should honor the first actual decision of a matter that has been actually litigated.'" *Chicago Truck Drivers, Helpers & Warehouse Union (Indep.) Pension Fund v. Century Motor Freight, Inc.*, 125 F.3d 526, 530 (7th Cir. 1997) (quoting 18 CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4416, at 136 (1981 & Supp. 1997)). This doctrine "ensures that 'once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.'" *Chicago Truck Drivers*, 125 F.3d at 530 (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). "The prerequisites for the application of [issue preclusion] are satisfied when: (1) the issue sought to be precluded is the same as that involved in the prior action; (2) that issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom [preclusion] is invoked was fully represented in the prior action." *Chicago Truck Drivers*, 125 F.3d at 530 (citation omitted). Importantly, as to the third element, the Seventh Circuit has clarified that "it is a mistake to equate the concept of finality for purposes of appellate review with the concept of finality for purposes of issue preclusion." *Haber v. Biomet, Inc.*, 578 F.3d 553, 557 (7th Cir. 2009) (discussing with approval the Restatement (Second) of Judgments § 13 (1982), which states that "for purposes of issue preclusion . . . , 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect"). A decision is sufficiently "final" to be given

preclusive effect if it amounts to "a final and reasoned pronouncement of" the deciding court. *Haber*, 578 F.3d at 557.

Relatedly, the law of the case doctrine may inform a court's decision regarding whether to reconsider an issue already decided in another court.  "The law of the case doctrine 'is a rule of practice, based on sound policy [and recites] that, when an issue is once litigated and decided, that should be the end of the matter.'" *Creek v. Vill. of Westhaven*, 144 F.3d 441, 445 (7th Cir. 1998) (quoting *Gertz v. Robert Welch, Inc.*, 680 F.2d 527, 532 (7th Cir. 1982)) (alteration in original). "[T]he doctrine applies as much to the decisions of a coordinate court in the same case as to a court's own decisions."  *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (citations omitted).  Where the same dispute is "framed in formally separate actions, either simultaneously or sequentially, in circumstances that do not support claim preclusion or issue preclusion[,] . . . later courts tend to adhere to earlier rulings by other courts for the same reasons that inform general law-of-the-case practices."  18B CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4478.4 (2d ed. Apr. 2020 Update).

Here, the validity of the forum-selection clause and the issue of whether that clause confers upon the SDNY personal jurisdiction over Pyrolyx Indiana have already been litigated in the SDNY case, and Pyrolyx Indiana was represented in the litigation of those issues.  Plaintiffs assert that this Court should not give preclusive effect to Chief Judge McMahon's ruling because that case has not reached a final judgment and because the issue addressed in that case is not precisely the same as the issue confronting the Court in this case.  Both of these arguments must be rejected. As to finality, it is true that the SDNY litigation has not reached a final judgment.  However, the threshold issue of personal jurisdiction has already been resolved and, because jurisdiction is a necessary prerequisite to judgment, is unlikely to be revisited and will be an essential component

of the judgment ultimately entered.  Thus, the determination is sufficiently final for purposes of

issue preclusion.  *See Haber*, 578 F.3d at 557.  As to identity of the issues, it is true that Chief

Judge McMahon's ruling was made in the context of a motion to dismiss for lack of personal

jurisdiction, whereas this Court is deciding a motion to transfer the case.  However, the issue of

whether the forum-selection clause is enforceable and whether it confers personal jurisdiction upon

the SDNY is the same, regardless of the context in which it arises.  Accordingly, the four

prerequisites of issue preclusion are satisfied, and this Court can accept Chief Judge McMahon's

well-reasoned determinations as to the enforceability of the forum-selection clause and the

existence of personal jurisdiction in the SDNY.

Even if the requirements of issue preclusion were not met, law of the case principles would

dictate the same result.  As explained further below, this action is essentially a mirror image of the

SDNY action, in terms of the parties involved and the claims raised.  Because the questions of

enforceability of the forum-selection clause and personal jurisdiction have already been litigated

by essentially the same parties, under the law of the case doctrine, "that should be the end of the

matter."  *Creek*, 144 F.3d at 445.  And it is.

As Plaintiffs point out, it is possible that, had this Court considered the issue first and

without the influence of the SDNY case, the analysis may have been different, given that this Court

would have needed to follow Seventh Circuit law dictating that state law—not federal law—

governs the enforceability of forum-selection clauses and Indiana—the forum state—has

legislation that purports to invalidate forum-selection clauses in certain kinds of contracts.  *See*

*Jackson v. Payday Fin., LLC*, 764 F.3d 765, 774 (7th Cir. 2014) ("At present, the majority of

federal circuits hold 'that the enforceability of a forum selection clause implicates federal

procedure and should therefore be governed by federal law.'  We have taken a different approach."

(internal citations omitted)).   This, however, is not the context in which this case is being considered, and for the foregoing reasons, this Court will adhere to Chief Judge McMahon's ruling.

The next question is whether the enforceable forum-selection clause applies to all of the parties and claims involved in this lawsuit.   When discussing the validity of forum-selection clauses, the Seventh Circuit has expressly rejected the notion that "a plaintiff can defeat a forum-selection clause by its choice of provisions to sue on, of legal theories to press, and of defendants to name in the suit."   *Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884, 888 (7th Cir. 2004).   In *American Patriot Insurance*, the plaintiff signed various contracts with the defendants and other affiliated corporate entities as part of a single insurance program, but only one of those contracts—between the plaintiff and an entity that was not named as a defendant—contained a forum-selection clause.   *See* 364 F.3d at 888.   The plaintiff attempted to avoid application of the forum-selection clause, asserting that none of the named defendants were signatories to the contract containing the clause, and that the claims were not purely contractual but involved allegations of fraud.   *Id.* at 888.   The Court of Appeals rejected the plaintiff's argument, noting that the claims all arose from the same insurance program and the series of contracts creating that program were "a package," and stating that, if the plaintiff could so easily avoid application of the forum-selection clause, such clauses would be rendered "empty."   *Id.* at 888-89.   Specifically, the Court explained:

> As for the fact that the defendants are charged with fraud rather than breach of contract, this can get the plaintiff nowhere in its efforts to get out from under the forum-selection clause.   Not only does the clause refer to disputes concerning the contractual relationship between the parties, however those disputes are characterized.   More important, a dispute over a contract does not cease to be such merely because instead of charging breach of contract the plaintiff charges a fraudulent breach, or fraudulent inducement, or fraudulent performance. The reason is not that contract remedies always supersede fraud remedies in a case that arises out of a contract; sometimes they do, sometimes they don't.   It is that the existence of multiple remedies for wrongs arising out of a contractual relationship does not

obliterate the contractual setting, does not make the dispute any less one arising under or out of or concerning the contract, and does not point to a better forum for adjudicating the parties' dispute than the one they had selected to resolve their contractual disputes.

Nor is a forum-selection clause to be defeated by suing an affiliate or affiliates of the party to the contract in which the clause appears, or employees of the affiliates. And as for the plaintiff's argument that the word "concerning" in the Shareholder Agreement's forum-selection clause is narrower than the more common term "arising out of," this is semantic quibbling.

*Am. Patriot*, 364 F.3d at 889 (internal citations omitted). *See also Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993) ("In order to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound.").

Plaintiffs' assertion that the forum-selection clause does not bind all of the parties in this action is without merit. Pyrolyx Indiana, which was formed for the express purpose of operating the Facility, is a wholly owned subsidiary of Pyrolyx USA, which was formed for the express purpose of expanding Pyrolyx Parent's operations in the United States. All three Pyrolyx entities were involved in the negotiations and preparations leading up to the formation of the Contract, and all three were involved in an ongoing business relationship with both Zeppelin entities, as evidenced by Plaintiffs' failure to distinguish among entities in the Amended Complaint and in other filings. In other words, if Plaintiffs see no need to make meaningful distinctions between the different entities named in this lawsuit when drafting their allegations, the Court sees no need to make such distinctions either. And, consistent with the cases outlined above, the Court concludes that all of the entities are closely related such that all of them are bound by the forum-selection clause, even though only Pyrolyx Indiana and Zeppelin USA were signatories to the Contract.

Whether the forum-selection clause applies to all of the claims at issue in this action is a slightly closer question, but one that is still resolved in favor of Defendants. The Contract states

that, "[i]n the event that a dispute arises between the Parties," certain rules will apply, including that "[v]enue for any claims or disputes under this [Contract] shall exclusively be the [SDNY]." [Filing No. 33-1 at 19.]  There can be no dispute that this clause covers the breach of contract claim.

As to the claim for fraudulent inducement/fraud, Plaintiffs allege that Defendants made various false representations that they could or would complete the Facility project in order to induce Plaintiffs to enter into the Contract, conceal their alleged breaches of the Contract, or prevent Plaintiffs from asserting their rights under the Contract.  [Filing No. 33 at 31-33.]  The allegations concerning the constructive fraud claim are substantially the same: that Plaintiffs relied upon Defendants' misrepresentations when deciding to proceed with the Indiana Facility project and enter into the Contract.  [Filing No. 33 at 33.]  In other words, Plaintiffs attempt to recharacterize their contractual dispute as fraud and constructive fraud claims.  This will not avoid application of the forum-selection clause.

Turning to the claims for tortious interference with contract or business relations and tortious interference with prospective economic advantage, Plaintiffs allege that Defendants interfered with relationships that Plaintiffs had "with numerous contractors and vendors to complete the [Facility] Project and to complete another Terre Haute project." [Filing No. 33 at 34; *see also* Filing No. 33 at 36 ("Pyrolyx had business relationships with numerous contractors and vendors to complete the Project and to complete another Terre Haute project.").]  Plaintiffs also allege that they were forced to hire these other contractors due to Defendants' alleged breach of the Contract, and that the threats Defendants made to these contractors were part of a campaign to shut down the Facility project and to "sabotage [Plaintiffs'] attempts to complete the Project and start [a] New Project."  [Filing No. 33 at 27-29.]  These allegations demonstrate that Plaintiffs'

tortious interference claims arose under the Contract in the sense that Defendants' allegedly tortious conduct was motivated by the contractual dispute and intended to interfere with completion of the project that was the subject of the Contract.  Thus, these claims fall within the scope of the forum-selection clause.  *See Am. Patriot*, 364 F.3d at 889 (noting "the existence of multiple remedies for wrongs arising out of a contractual relationship does not obliterate the contractual setting, [and] does not make the dispute any less one arising *under* or out of or concerning the contract" (emphasis added)); *Hugel*, 999 F.2d at 209 (concluding that the plaintiff's tortious interference claim was within the scope of the forum-selection clause covering "any dispute and/or controversy of whatsoever nature arising out of or relating to" the parties' contractual relationship).

### 2.   Propriety of Transfer Under § 1404(a)

Having determined that the valid forum-selection clause binds all of the parties and encompasses all of the claims at issue in this action, the Court next considers whether transfer is appropriate under § 1404(a).  The Supreme Court has held that § 1404(a) "provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district," and "a proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'"  *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 59-60 (2013) (quoting *Stewart*, 487 U.S. at 33 (Kennedy, J., concurring)).

In a case where there is no forum-selection clause, a court would ordinarily evaluate the convenience of the parties and various public interest considerations, weighing the relevant factors to determine whether, on balance, transfer would serve the convenience of the parties and witnesses and promote the interests of justice.  *Atl. Marine*, 571 U.S. at 62-63 (citing 28 U.S.C. § 1404(a)).  The existence of a valid forum-selection clause, however, changes this analysis in

three important ways: (1) the plaintiff's choice of forum is entitled to no weight, and the plaintiff

bears the burden of demonstrating that transfer is unwarranted; (2) the court must deem the private-

interest factors to weigh entirely in favor of transfer to the preselected forum and only consider

arguments as to the public-interest factors; and (3) the transfer will not carry with it the original

venue's choice-of-law rules. *Atl. Marine*, 571 U.S. at 62-65.  "Public-interest factors may include

'the administrative difficulties flowing from court congestion; the local interest in having localized

controversies decided at home; [and] the interest in having the trial of a diversity case in a forum

that is at home with the law.'"  *Id.* at 63 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241,

n. 6 (1981)) (alteration in original).  These factors "will rarely defeat a transfer motion." *Atl.*

*Marine*, 571 U.S. at 64.

     As to the public-interest factors, Plaintiffs, who bear the burden of demonstrating that the

case should not be transferred, point to: (1) docket congestion and the likely speed at which the

case would proceed to trial in each district; (2) each court's familiarity with applicable law; and

(3) the desirability of resolving controversies in each locale and each community's relationship to

the controversy.  [Filing No. 51 at 27-32.]  Regarding the first factor, Plaintiffs concede that "the

statistics submitted by Zeppelin Defendants show that there is no meaningful difference in the

average speed this District and the SDNY resolve cases."  [Filing No. 51 at 29.]  However, they

assert, the deadlines and schedules established in the two cases show that the case in this District

would likely conclude first.  [Filing No. 51 at 28-29.]  Setting aside the practical reality that case

management deadlines can be, and often are, extended and that it is impossible to know at this

early stage how long litigation in either court will take, the Court notes that it is the third busiest

District in the country as measured by weighted filings per judgeship.  United States Courts, U.S.

District Courts – Combined Civil and Criminal Federal Court Management Statistics (June 30,

2019), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2019.pdf. The SDNY is certainly busy as well. *See id.* The Court is confident in its own ability to efficiently dispose of cases, and it is equally confident in the SDNY's ability to do the same. This factor does not weigh against transfer.

In addition, because the Contract states that New York law will apply, the familiarity of each court with applicable law weighs in favor of transfer. Furthermore, although Indiana may have an interest in litigating a dispute concerning a facility that was intended to be built in Indiana by an Indiana company, such interest does not control, given that a New York court is already going to hear its case regardless of what this Court concludes, and the Indiana company contractually agreed to a New York forum. Finally, there is also a public interest in the wise and efficient use of judicial resources, and that interest counsels in favor of transferring this matter to the SDNY to be adjudicated along with the exceedingly similar lawsuit that is already pending there. Public-interest factors rarely defeat a motion to transfer, and they certainly do not in this case.

### 3.   Propriety of Transfer Based on Principles of Wise Judicial Administration

Independent of the fact that transfer is appropriate under § 1404(a), judicial considerations also counsel in favor of this Court exercising its inherent power to prevent duplicative, piecemeal litigation. The Court has a strong interest in avoiding duplicative litigation that could produce contradictory results. This interest has often been recognized in the context of concurrent state and federal court litigation, but also applies in the context of ongoing litigation in two federal courts. *See Lumen Const., Inc. v. Brant Const. Co.*, 780 F.2d 691, 694 (7th Cir. 1985) ("When a case proceeds on parallel tracks in state and federal court, the threat to efficient adjudication is self-evident. But judicial economy is not the only value that is placed in jeopardy. The legitimacy

of the court system in the eyes of the public and fairness to the individual litigants also are endangered by duplicative suits that are the product of gamesmanship or that result in conflicting adjudications.").  As discussed above, this action and the SDNY action involve essentially the same parties and claims that are related enough that they should be decided in a single action, not separately by two different federal courts.  *Cf. id.* at 695 ("In analyzing whether a dismissal or stay will further the interest in avoiding piecemeal litigation, we look not for formal symmetry between the two actions, but for a substantial likelihood that the state litigation will dispose of all claims presented in the federal case.  If the rule were otherwise, the *Colorado River* doctrine could be entirely avoided by the simple expedient of naming additional parties. While *Colorado River* is considerably more limited in scope than the doctrines of res judicata and collateral estoppel, like them its impact cannot be obliterated by the stroke of a pen.") (internal citations omitted).

In sum, Plaintiffs' addition of parties and reframing of claims in an attempt to litigate in this Court while another nearly identical case is pending in the SDNY amounts to gamesmanship that this Court will not indulge, especially where doing so would run contrary to the well-established federal policies of enforcing forum-selection clauses and disfavoring duplicative litigation in coequal courts.  The Court concludes that this case should be transferred to the SDNY pursuant to § 1404(a) and based on the Court's inherent authority to manage its docket in a way that conserves judicial resources and avoids duplicative litigation.

### III.
### MOTION TO DISMISS

Given that this case will be transferred, the Court will not address the Motion to Dismiss. The Motion shall remain pending for disposition in the transferee court.

**IV.**

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Transfer Venue or, in the Alternative, to Dismiss or Stay Plaintiffs' Claims Against Defendants, [23], and the Clerk is **DIRECTED** to transfer this matter to the United States District Court for the Southern District of New York.  Defendants' Partial Motion to Dismiss Plaintiffs' Complaint, [48], **shall be terminated on the docket of this Court, but shall remain pending** for disposition in the transferee court.

Date: 7/14/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**